## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEREK DOUGHERTY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 3:15-cv-00396-MJR** |
| | ) |
| **JOHN LAKIN,** | ) |
| **GARY BOST,** | ) |
| **MIKE HARE,** | ) |
| **ROBERT BLANKENSHIP,** | ) |
| **ROBERT HALLENBOCH,** | ) |
| **PAUL SARBAGE,** | ) |
| **CRAIG REICHART,** | ) |
| **MIKE TASSOME,** | ) |
| **TIM WALKER,** | ) |
| **STEVE RIDINGS,** | ) |
| **TOM SHMIDT,** | ) |
| **DON MCNAUGHTEN, and** | ) |
| **DREW BECKLEY,**[1] | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Derek Dougherty is currently incarcerated at the Vandalia Correctional Center in Vandalia, Illinois, but was previously incarcerated at the Madison County Jail in Edwardsville, Illinois. (Docs. 10 & 14.) Proceeding *pro se*, Dougherty has filed an amended complaint pursuant to 42 U.S.C. § 1983 against various Madison County officials, alleging that they did not give him proper medical care, illegally seized his property, retaliated against him, and exposed him to inhumane conditions. (Doc. 10 at 10-35.) Dougherty seeks money damages. (*Id.* at 9.)

---

[1] Dougherty has named different defendants in his amended complaint as compared to his initial one, and his amended complaint controls. *Wellness Comm.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995). Accordingly, the **CLERK** is **DIRECTED** to update the docket as reflected in the caption above, and to remove those defendants not named in the amended complaint.

This matter is now before the Court for a preliminary review of Dougherty's amended complaint pursuant to 28 U.S.C. § 1915A.  Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity."  During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## **Background**

According to Dougherty's amended complaint, he was initially housed at the Madison County Jail as a pretrial detainee on or around February 17, 2015.  (Doc. 10 at 1 & 10.)  During his tenure as a detainee at the jail, Dougherty says that inmates were exposed to a number of improper policies related to medical care:  the jail uses deputies rather than nurses to hand out medications; the jail does not provide twenty-four hour care to inmates; and the jail only provides inmates with access to medical staff for questions about prescriptions at one point during the day.  (*Id.* at 10-16.)  Dougherty goes on to allege that he was exposed to improper conditions at the jail – the jail is too cold, Dougherty's cell was infested with ants, Dougherty was not provided clothes over and above the jumpsuit given to detainees, and there were sewage leaks that were not properly cleaned up in Dougherty's unit.  (*See id.* at 24-34.)

Beyond these claims, Dougherty also says that he began suffering from severe abdominal pain and constipation shortly after he arrived at the jail.  (*Id.* at 16-17.)  He first saw Nurse Unfried related to this problem and she gave him an unknown drug for treatment, seemingly on the orders of Dr. Blankenship.  (*Id.* at 17.)  The pill did Dougherty no good, so he returned to the jail's infirmary a few days later.  (*Id.* at 18-19.)  This time he saw Rushing, who gave him a

different pill and said she would discuss the matter with Dr. Blankenship. (*Id.*) After a "few days," Dougherty was still suffering from "relentless" abdominal pain, so he requested another sick call visit. (*Id.* at 19.) He was seen by Unfried, who told him she would put in for him to see Dr. Blankenship. (*Id.* at 19-20.) That visit never happened – Dougherty was told that Blankenship "decides who gets to see him" – and Dougherty went without further treatment during the remainder of his time at the jail. (*Id.* at 20-23.) Dougherty wrote to Bost at some unspecified point, but he did not receive a response. (*See id.* at 21-23.)

Over and above claims related to Dougherty's medical care, Dougherty also discusses a number of other issues he experienced at the jail in his amended complaint. For one, he says that Deputy Hare was present for one of his sick call visits, and improperly looked at his medical records and found out that he was suffering from constipation. (*Id.* at 20-21.) Next, he says that Hare threw a milk carton at several detainees in Dougherty's cell in April 2015, and after that called Dougherty "Dick Dougherty" and slammed doors at the prison – actions which Dougherty said "seemed like" some kind of retaliation for unspecified lawsuits filed by inmates. (*Id.* at 27-29.) Finally, Dougherty claims that Hallenboch improperly seized his clothes and other property during a shakedown and did not provide a shakedown slip after the search. (*Id.* at 25-27.)

Dougherty filed his initial complaint on April 9, 2015, and that complaint was dismissed with leave to replead on May 1, 2015. (Doc. 8.) On June 1, 2015, Dougherty filed his amended complaint. (Doc. 9.) Since filing his amended complaint, Dougherty's time at the Madison County Jail has ended, and he is now housed at the Vandalia Correctional Center. (Doc. 14.).

## Discussion

Dougherty's amended complaint is a bit long and hard to follow, making it difficult for the Court to parse his complaint into divisible claims for screening under § 1915A.

Nevertheless, to facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court will do its best to break the claims in Dougherty's *pro se* complaint into numbered counts, as shown below.  Any claims not enumerated below should be considered dismissed without prejudice.  The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:**  Blankenship, Rushing, Unfried, and Bost provided improper care for Dougherty's abdominal pain, in violation of the Fourteenth Amendment.

**COUNT 2:**  Blankenship, Rushing, and Unfried failed to provide Dougherty with information about the medications used to treat his constipation and abdominal pain, in violation of the Fourteenth Amendment.

**COUNT 3:**  Bost and Lakin failed to provide Dougherty with a proper grievance process, in violation of Dougherty's constitutional rights.

**COUNT 4:**  Bost and Lakin instituted medical policies at the jail that violated detainees' due process and equal protection rights.

**COUNT 5:**  Hare retaliated against Dougherty by throwing a carton of milk at him, calling him "Dick Dougherty" rather than "Derek Dougherty," and slamming doors at the jail, in violation of the First Amendment.

**COUNT 6:**  Hare looked at Dougherty's medical file and learned of his abdominal issues, in violation of Dougherty's constitutional and statutory rights.

**COUNT 7:**  Blankenship, Major, Unfried, Rushing, and Bassets failed to provide medical care to Dougherty after a sewage leak at the jail, in violation of the Fourteenth Amendment.

**COUNT 8:**  Bost, Lakin, and other jail guards exposed Dougherty to inappropriate conditions of confinement, in violation of the Fourteenth Amendment.

**COUNT 9:**  Hallenboch improperly seized Dougherty's property during a shakedown at the jail, in violation of his constitutional rights.

Dougherty's amended complaint focuses on the medical care he received at the jail for his abdominal pain and constipation, so the Court will start there (**Count 1**).  Because Dougherty

was a detainee during the events at issue, his claims arise under the Fourteenth Amendment of the United States Constitution, rather than the Eighth Amendment. *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013). That said, the elements of a medical claim are roughly the same under both amendments: to make out a claim, a detainee must allege that he had a serious medical condition and that jail staff behaved recklessly in response to it. *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

For screening purposes, Dougherty has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). While it is a close case, Dougherty's claims of severe abdominal pain and constipation put forth an arguably serious condition, at least at screening review. *See id.* at 1372 n.7.

Whether Dougherty has alleged reckless conduct is a defendant-by-defendant inquiry. He has alleged enough concerning some aspects of Dr. Blankenship's care: he says that Blankenship refused to see him despite the fact that he was referred to him for care, and that is just enough to state an arguable claim against him at this early stage of the case. However, Dougherty's efforts to yoke other individuals into this claim must be rejected. He alleges that Rushing and Unfried were involved in his care, but neither party is named in the caption or the list of defendants, so they cannot be treated as defendants in this case. *See Myles v. United*

*States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendant must be "specif[ied] in the caption").  In addition, Dougherty attempts to rope Bost into this claim by saying that he sent him a letter and Bost did not respond.  While a prisoner can sometimes state a claim against an official when a communication advises the official of a danger and he fails to act, Dougherty provides next to no information about the correspondence he sent to Bost concerning his medical issues at the jail – he says nothing about the date of his letter and provides only summary allegations about what was in his communications to Bost.  Without more information about the letter, he has not provided the minimal "factual content" necessary to state a claim against him under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, **Count 1** may proceed as to Dr. Blankenship, but must be dismissed without prejudice as to Bost, Unfried, and Rushing.

Dougherty next alleges that Blankenship and others failed to provide him with information about his medical care prior to treatment (**Count 2**).  While some circuits have recognized an independent claim for a failure to provide information to a prisoner prior to treatment, *Pabon v. Wright*, 459 F.3d 241, 249–50 (2d Cir. 2006), the Seventh Circuit has not yet decided whether that kind of claim is viable, *Cox v. Brubaker*, 558 F. App'x. 677, 679 (7th Cir. 2014).  Even if such a claim was valid in this circuit, Dougherty's claim here must fail, as he has not alleged the requirements imposed on those claims in other circuits – he has not alleged that a lack of information led him to undergo treatment that he would have refused or that medical staff at the jail failed to fill him in on the risks in an effort to force treatment.  *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 384 (S.D.N.Y. 2009) (citing *Pabon* and holding that an inmate trying to raise such a claim "must allege" that the failure to provide information "caused him to undergo medical treatment that he would have refused had he been so informed" and that the "officials' failure was undertaken with deliberate indifference," as it would if medical staff "withheld

information from [the prisoner] for the purpose of requiring [the prisoner] to accept [treatment]").  Accordingly, **Count 2** must be dismissed without prejudice.

Dougherty goes on to claim that Bost and Lakin failed to provide him with an adequate grievance process to air his medical problems (**Count 3**).  This claim is a non-starter:  the Seventh Circuit has rejected any free-standing due process claim concerning a prison's grievance process.  *See*, *e.g.*, *Courtney v. Devore*, 595 F. App'x 618, 620-21 (7th Cir. 2014) (noting that "state grievance procedures do not create substantive liberty interests protected by due process," and the "mishandling" of those grievances states no claim); *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause . . . .").  Rather, the right to a grievance procedure exists only to ensure access to the courts.  *See Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008) (noting that the "procedural right" concerning the handling of grievances exists "to ensure that prisoners and detainees can access the courts").  Here, Dougherty has not alleged a barrier to court, and his "invocation of the judicial process" points in the opposite direction.  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 2009).   More to the point, it would be tough for Dougherty to allege that grievance issues blocked his way to court – if officials "do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," the grievance system would be unavailable, and the way to federal court would be clear.  *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (prison remedies deemed exhausted remedies where "prison officials were responsible for the mishandling of [a prisoner's] grievance").  In any event, because Dougherty has not alleged a barrier to court, **Count 3** must be dismissed without prejudice.

Dougherty next takes issue with a number of policies put in place by Lakin and Bost concerning medical care at the jail: he says that deputies dispense medications, that the jail does not have twenty-four hour access to medical care, and that medical staff are not provided frequently enough for prisoners to ask questions about their care (**Count 4**). The wrinkle with these claims is that Dougherty does not explain how these jail practices violated *his* rights or injured *him*; he merely alleges that these policies affected unspecified detainees. For example, on the medication point, Dougherty does not allege in his current complaint that deputies dispensed medications to him – the only medications he mentions in his amended complaint were given directly to him by Rushing or Unfried. A plaintiff typically cannot bring a claim concerning injuries to others but can only sue for injuries "to his *own* interests." *Laskowksi v. Spellings*, 546 F.3d 822, 825 (7th Cir. 2008). Because Dougherty does not offer any allegations as to how these policies impacted him, **Count 4** must be dismissed without prejudice.

Dougherty also says that Hare retaliated against him and other inmates for filing lawsuits against officials at the jail by throwing a small carton of milk at him, calling him a name, and slamming doors (**Count 5**). To put forth a retaliation claim, a plaintiff must "plausibly allege" that he "engaged in activity protected by the First Amendment," that he "suffered an adverse action that would likely deter future First Amendment activity," and that the "First Amendment activity was at least a motivating factor in the defendants' decision to retaliate." *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012). Here, Dougherty does not provide any details about the lawsuits that he says motivated Hare and does not definitively allege that Hare was motivated by those lawsuits. In addition, Dougherty does not claim that Hare's actions would deter an ordinary person from engaging in future First Amendment activity, and the isolated actions he mentions appear *de minimis*. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.

1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ."). Accordingly, **Count 5** must be dismissed without prejudice.

Dougherty next alleges that Hare improperly looked at his medical file, and from that information learned of Dougherty's constipation woes (**Count 6**). To the extent Dougherty is attempting to raise a claim under the Health Insurance Portability and Accountability Act, this claim is meritless, as there is no private right of action under that statute. *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011). In addition, the Seventh Circuit has not explicitly recognized the viability of any constitutional medical privacy claim for inmates. *Franklin v. McCaughtry*, 110 F. App'x 715, 718-19 (7th Cir. 2004); *Anderson v. Romero*, 72 F.3d 518, 523-24 (7th Cir. 1995). Those circuits that have recognized such a cause of action restrict it to disclosures of sensitive information by guards to other inmates, not disclosures of non-sensitive information to other officials within a prison. *See Franklin*, 110 F. App'x at 719 (noting other circuit authority on this point and indicating that viable claims were restricted to dissemination of "intensely private medical information," such as HIV status or transsexualism); *Moore v. Prevo*, 379 F. App'x 425, 427 (6th Cir. 2010) (limiting right of privacy to disclosures of highly private and sensitive information to "other inmates," rather than other corrections officers). Here, Dougherty does not allege a disclosure of a sensitive piece of medical information, nor does he allege that the information at issue was disclosed to prisoners. As such, he has not stated a constitutional privacy claim, so **Count 6** must be dismissed without prejudice.

Dougherty goes on to allege that several medical officials at the jail – namely Blankenship, Major, Unfried, Rushing, and Bassets – should have provided him care after one of the sewage leaks at the jail, which caused unspecified detainees to suffer from headaches and

"upset stomachs" (**Count 7**).  This claim fails against Major, Unfried, Rushing, and Bassets because they were not named in the caption or the defendant list for this case, meaning that they cannot be considered parties.  *Myles*, 416 F.3d at 551–52.  And this claim fails against Blankenship because Dougherty does not allege that he suffered from any serious medical condition related to the sewage leak, nor does he allege that Blankenship knew of a need for treatment linked to the sewage problem but turned a blind eye.  *See Cavalieri v. Shepard*, 321 F.3d 616, 627 (7th Cir. 2003) (to bring a claim, a party must allege that a defendant "knew of the risk," not "just should have known").  So **Count 7** must be dismissed without prejudice.

The rest of Dougherty's claims relate to defendants who are no longer parties to the above counts:  he says that he was exposed to improper conditions at the jail by Lakin and others (**Count 8**), and that his property was wrongly seized by Hallenboch (**Count 9**).  The defendants linked to those claims must be dismissed on misjoinder grounds.  Under Federal Rule of Civil Procedure 20, a plaintiff may join as many defendants as he wants in one action so long as "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences" and "any question of law or fact common to all defendants will arise in the action."  FED. R. CIV. P. 20(a)(2).  What a plaintiff cannot do under Rule 20 is join unrelated claims against separate groups of defendants in one suit – a "litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."  *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012).  This barrier against multi-defendant, multi-claim suits avoids the procedural "morass" that comes with these types of cases, and also ensures that inmates pay filing fees and incur strikes as envisioned by the Prison Litigation Reform Act.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Here, Dougherty's claims against Lakin and the other jail personnel linked

to his conditions at the jail and the seizure of his property are unrelated to his surviving claim against Blankenship concerning his medical care, so these defendants must be dismissed from this case.  *See Owens*, 635 F.3d at 952 (permitting a court to sever or dismiss in misjoinder matters).  Dougherty is free to bring claims against these defendants in a separate action, if he wishes.  The Court takes no position as to the merits of these claims at this time.

One closing note is in order concerning a motion Dougherty filed after he submitted his amended complaint in this case.  On July 10, 2015, Dougherty filed a motion to "admit evidence" concerning a letter he received about the milk throw by Hare from an investigator with the Department of Corrections, which says that Hare acted with no malicious intent when he underhandedly tossed a milk carton at Dougherty in April 2015.  (Doc. 12.)  This motion seems to be an effort by Dougherty to add to the retaliation count in his complaint – dismissed without prejudice above – in a piecemeal fashion.  The motion must be denied.  If Dougherty wishes to augment the factual allegations for any of the counts in his complaint, he must file an amended complaint in accordance with Federal Rule of Civil Procedure 15 and Local Rule 15.1.  Because an amended complaint supersedes and replaces all previous ones, the amended complaint must contain all of the relevant allegations supporting each claim and must stand on its own.  *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  Once more, under the Court's local rules, all new material in the amended complaint must be underlined.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **BLANKENSHIP**.  **COUNT 1** is **DISMISSED without prejudice** as to all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 6** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 7** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNTS 8 and 9** are **DISMISSED without prejudice**, as **LAKIN**, **BOST**, **HARE**, **HALLENBOCH**, **SARBAGE**, **REICHART**, **TASSOME**, **WALKER**, **RIDINGS**, **SCHMIDT**, **MCNAUGHTEN**, and **BUCKLEY** were improperly joined.  These defendants are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that Plaintiff's motions for service of process (Doc. 3 & Doc. 9) are **GRANTED IN PART**.  Service will be ordered as indicated below.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendant **BLANKENSHIP**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to the Defendant's place of employment as identified by Plaintiff.  If the Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if the Defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any

documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the Defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that Plaintiff's motion to admit evidence and response (Doc. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or

her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 11, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge Michael J. Reagan**
**United States District Judge**